# Nashville & Decatur Railroad Co.
## *v.* The State.

*Contest over Assessment of Property for Taxation.*

1. *Assessment of railroad property; jurisdiction of State Board of Assessment.*—Under the provisions of the statute, (Code, §§ 3967, 3968) the State Board of Assessment has jurisdiction to

[Nashville & Decatur Railroad Co. v. The State.]

assess only such items of railroad property as are, under the law, required to be returned to the auditor by the railroad companies.

2. *Same; same.*—It is of no consequence how indispensable said property may be to the operation of the railroad, or what is the character of such property, if it is not by the statute required to be returned to the auditor, the State Board of Assessment is wholly without jurisdiction to assess it, and it must be assessed by the tax assessor of the county wherein such property is situated.

3. *Same; same; what property should be returned.*—Under the provisions of the statute providing that railroad companies should make returns to the auditor of certain property, and that the State Board of Assessment can assess only the property so returned, (Code, §§ 3964-3967), said State Board of Assessment has no jurisdiction to assess any property of the railroad companies, except the right of way, the road bed, side tracks, main tracks, together with locomotives and the cars and supplies carried on trains for sale to employees.

4. *Same; same; same; meaning of right of way.*—The words "right of way" used in the statute for describing the items of property of a railroad company required to be returned to the auditor for the purpose of being assessed for taxation by the State Board of Assessment, mean only the easement of the railroad in land over which it has a right of way, and not occupied by its main track and side track, and does not include such property as may be situated or located upon the right of way; and, therefore, structures of all kinds on the right of way and owned by the railroad company, is property assessable by the assessors of the county in which such property is found.

5. *Same; same; same.*—Depots, platforms, station houses or water tanks owned by a railroad company and situated on its right of way are not subject to be assessed for taxation by the State Board of Assessment, but must be assessed by the tax assessors of the counties wherein such property is situated; and this is true, although such property is indispensable and essential to the operation of the railroad.

APPEAL from the Circuit Court of Limestone.

Tried before the Hon. H. C. SPEAKE.

The proceedings in this case were commenced by a petition being filed by the Nashville & Decatur Railroad Company, addressed to the court of county commissoners of Limestone county. The petition averred

that the petitioner was the owner of certain property described therein, which said property is situated in Limestone county; that said property has been assessed for taxation in the year 1900, as escaped by the tax assessor of Limestone county, and that the same has been regularly reported to the court of county commissioners, as required by law. It was then averred that the petitioner was a railroad corporation and existing under the laws of the States of Tennessee and Alabama; that it owns a railroad extending through Limestone county, Alabama; that all of its property assessed by the tax assessor, as escaped from taxation, is used and occupied by the petitioner for the purpose of carrying on its business as a railroad company and is necessary in the operation of its road; that such property constitutes an essential part of its railroad and is on the right of way of the petitioner; that the petitioner could not discharge its duties to the public without having the property described for use as freight and passenger stations, etc. It is then further averred in the petition that said property is wholly used by the petitioner as a common carrier, for the purposes above stated, and that the petitioner has, in accordance with the laws of Alabama, made return of said property for the year 1900 to the State auditor, and that the State Board of Assessment has assessed the same for the year 1900, which Board has the exclusive jurisdiction of the assessment of said property for taxation; and that, therefore, said property is not liable to assessment for taxation by the county authorities of Limestone county.

The prayer of the petition was that the court of county commissioners set aside, reject, annul and vacate said assessment as made by the tax assessor. The property referred to in the petition and alleged to have been assessed as escaped property by the tax assessor, was the following: The cotton platforms at a station called State Line, which platforms are within less than 50 feet of the center line of the main track of the petitioner; the depot building at Harris station, which is within 50 feet of the center line of the main track;

the depot at Elkmont, which extends 49 feet from the center line of the main track, and is situated on a lot which extends 75 feet in width from the center line of the main track; the depot and lot occupied by it in the city of Athens. The tracks of the petitioner are laid in Monroe street in Athens, and the depot is on lot 1, in block 24, and the building extends from 62 to 74 feet beyond the center line of the main track. A water tank at Athens, which is located also on Monroe street, and is about 8 feet from the center line of the main track.

There was a motion made by Limestone County to dismiss the petition upon the following grounds: 1. It contains no answer to the assessment of said property by the tax assessor. 2. It presents no valid reason or ground for vacating or annulling the assessment. 3. Said State Board of Assessment of railroads has no power or authority to assess the property so assessed. 4. It is immaterial whether the railroad could be operated without the property assessed or not. 5. The property so assessed is subject alone to be assessed for taxes by the tax assessor of Limestone county, and no authority or power is given by law to the State Board of Assessment to assess such property.

The court of county commissioners sustained the motion to dismiss the petition, and rendered a decree declaring that the property described in the petition was properly subject to assessment by the tax assessor of Limestone county. From this decree an appeal was taken to the circuit court. In the circuit court the cause was tried by the court without a jury, upon an agreed statement of facts. In this agreed statement of facts the property sought to be assessed for taxation and referred to was set out as above stated, and it was further stated therein that the line of the railroad of the petitioner extended through Limestone county, and that said property assessed by the tax assessor was used and occupied by said railroad company for the purposes averred in the petition, and that the same constituted an essential part of its railroad, and that said property is located along its right of way, and is wholly used by it as a common carrier, for

the purposes stated, as a part of its railroad and not otherwise. The agreed statement of facts then continues as follows: "It is further agreed that said railroad company has made return of its property for the year 1900 to the State Auditor as required by the laws of the State and that the State Board of Assessment has assessed the same for the year 1900, except that said return and the assessment thereon do not specifically describe or include the property herein involved. The property herein involved has always heretofore been returned by defendant to the county tax assessor of Limestone county. The State Board's assessment of main and side tracks is at the same valuation per mile, respectively, for the year 1900, when defendant refused to return the property involved to the county tax assessor as for the year preceding when it did so return said property to the county tax assessor."

Upon this evidence the court rendered judgment, affirming the decision and judgment of the court of county commissioners, and held that the tax assessments as made by the tax assessor were valid, and that said property of the Nashville & Decatur Railroad Company was subject to assessment for taxes by the county officers of Limestone county. From this judgment the petitioner appeals, and assigns the rendition thereof as error.

THOS. G. & CHAS. P. JONES, J. M. FALKNER, J. B. JONES and HUMES, SHEFFEY & SPEAKE, for appellant. In the case of *Purifoy, Auditor, v. Lamar*, 112 Ala. 131, this court said: "The Code, § 2, subdiv. 2, defines the term 'real property' as co-extensive with lands, tenements and hereditaments; and in section 450, subdiv. 1, those words are again, for the purposes of taxation, defined to mean and include not only land, city, town and village lots, *but also all things thereunto pertaining*, and also *all structures and other things so annexed or attached thereto, as to pass to a vendee by the conveyance of the land and lot.*" For the purposes of taxation, the rule is well settled that the right of way and the road bed of railrods, in the absence

of statute regulations, are treated as real estate, or an interest in land.—Wetty's Law of Assessment, § 142; Hilliard's Law of Taxation, 273-276; 1 Desty on Taxation, 396; Cooley on Taxation, 367; *The People v. Cassity*, 46 N. Y. 46; *The People v. Beardsley*, 52 Barb. 105; *The People v. The N. Y. & H. R. R. Co.*, 101 N. Y. 322; *The Sangamon & M. M. R. Co. v. The County of Morgan*, 14 Ill. 163; *Tenn. & Coosa R. R. Co. v. East Ala. R. Co.*, 75 Ala. 516; *Jones v. R. R. Co.*, 70 Ala. 227; *Hooper v. R. R. Co.*, 78 Ala. 213; *Cen. Pac. R. R. Co. v. Benity*, 5 Sawyer.

Railroad companies receive no income from their depots, water tanks, coal chutes or other similar structures. They are at no time operated or used other than for purely railroad purposes. They have no other value except for the purposes for which they are used, and there is no way by which a tax assessor or any one else can arrive at a correct conclusion as to the value of a depot, platform, coal chute or other similar structure, without its value to the railroad company for railroad purposes beng taken into consideration, unless it was valued as so much lumber, iron, nails, etc. Under section 3940 of the Code real and personal property shall be estimated at its value in money, according to the best judgment the assessor can form upon information, etc., and, therefore, it would seem to follow that it would not be possible for a tax assessor to assess these properties, depots, platforms, etc., separate and apart from the ground upon which they rest, and arrive at any reasonable, fair or just conclusion as to what the value of such property is. See in this connection the case of *State of Nevada v. Virginia & Truckee R. R. Co.*, 35 Lawyers Rep. An. 759; *Perry v. R. R. Co.*, 65 Ala. 391.

The depot and other structures erected on the right of way afford such conveniences and facilities as a railroad company may be expected to provide for the transaction of its business in such locality. The land is used for the purposes incidental and auxiliary to the transportation business authorized to be conducted over it.—*Elyton L. Co. v. S. & N. R. R. Co.*, 95 Ala.

631; citing *Inhabitants of Worcester v. Western R. R. Corp.*, 4 Metc. 564.

Similar statutes to ours, in other States, have been construed in the following cases, and structures on the right of way have been held to be assessable by the State boards of assessment instead of by the local authorities, as being included within the meaning of the words "right of way," railroad track," etc.—*People ex rel, Scipp v. R. R. Co.*, 24 A. & E. R. R. Cas. 612; *Pfaff v. R. R. Co.*, 29 A. & E. R. R. Cas. 181; *R. R. Co. v. Goar*, 29 A. & E. R. R. Cas. 189; *W. N. Y. & P. R. Co. v. Vanango Co.*, (Pa.) 10 A. & E. R. R. Cas. (new series) 185; *C., M. & St. P. Ry. Co. v. Cass Co.* (N. D.) 11 A. & E. R. R. Cas. (new series) 813; *C., M. & St. P. Ry. Co. v. Grant*, (Ill.) 11 A. & E. R. Cas. (new series) 823; 25 Am & Eng. Ency. of Law (1st ed.), 651 and cases cited in notes.

THOS. C. MCCLELLAN, *contra.*—The statute authorizing the assessment of taxes against railroad companies by the State Board of Assessment do not include property of the character involved in this controversy.

The whole law of the case, the governing law of the case, is found in Article VI, §§ 3964 to 3976, of the Code of Alabama. These statutes present the scheme of assessment of railroads in this State by the State Board. They prescribe just what shall be assessed by the board, and in the last section cited relegate to the counties, or their assessors, the assessment of that property not otherwise provided to be assessed. If, then, in this case the property here in question, described in the record, is not assessable by the State Board, it is assessable by the county assessor; and the question simplifies itself into a construction of the section of the Code applicable to railroad assessments as found in article 6.

In construing these statutes it must be borne in mind that they work a change in the usual method of assessing property, real property or of that nature. Usually property real, or in its nature real, is assessable in the county where it lies or is. For reasons

later to be mentioned this universal regulation is changed in the assessments of railroads, and a State Board is constituted to assess railroads as therein provided to be assessed, with their movable equipment. The motive for the constitution of this board should be given consideration in arriving at a fair construction of what lawmakers intended to accomplish by this departure from the usual method of assessing property in the state. Railroads traverse many counties of the State, almost every one. They have varying miles of track in the several counties, some more than others, and some only a short mileage. It was seen, no doubt, that there were several counties, through their proper authorities, permitted to assess these corporations, great injustice would result to the companies. In some counties the tax per mile would be large, in others much less, dependent upon the necessities of the counties, or the cupidity of its officials or the unpopularity of the concerns. This could only be remedied by the creation of a State board, composed of high State officials, sitting at the capitol, upon which board the worthy or unworthy considerations mentioned would not operate; and, in addition uniformity of assessment could be secured.

It is obvious that the predominant idea in the granting of power of assessment to this board was to uniformize the assessment, as well as to prevent the injustices hereinabove mentioned, and to that end length of track, miles of constructed road-bed, was intended by the lawmakers to be given into the care of the board. The statutes forbid any construction that localizes the duties of the board. The extent of power in assessment and the obvious reason for the granting of that power to the board are both inconsistent with any idea of local assessments, of local improvements.

It will be further borne in mind that there is nothing in this record that justifies any assumption that the right of way of the appellant extends any given distance from the center of its track. The fact is the appellant has only such right of way as it has acquired by prescription. No one hundred feet has ever been

owned by it anywhere in Limestone county and, as said before it can only and does really only claim so much territory as it has used for more than twenty years.

As to the contention that the expression "right of way" in the section covers these properties. The right of way of a railroad, certainly of this railroad, with only prescription acquired territory, is that space occupied by its road-bed over which in the main its trains are operated. If not, to what extent will it go? Some of the property here in question is one-hundred and seventy-five feet from the track, other of it is nearer by fifty feet. Where would the line be drawn? The depot in Athens and the grounds around it, some of it one hundred and seventy-five feet from the track cannot be deemed a part of the right of way of a railroad. The cotton platform at Elkmont is not a part of the right of way of this road. The very uncertainty of the thing refutes the idea that depots, platforms, etc., can be considered, much less adjudicated, by this court to be the "right of way" of *a railroad*. All this is local property of the appellant and the expression "right of way" cannot be forced and contorted to cover a flower garden or a wagon yard or a spring up in the hills where a nature-afforded tank is filled for the appellant.

The State Board is required to assess and then apportion to the counties according to "miles of track" etc. The injustice, if appellant is right, that this local property should be added in and apportioned is apparent.

The locality and the county that can furnish sufficient business to these carriers of freight and passengers to justify them in building great stations and freight depots ought to have the benefits accruing from them, by taxation as well as by incalculable convenience. And to divide and apportion the values among remote communities is a wrong never contemplated by those who in all wisdom perfected the State Board of Assessment.

Therefore this property should be assessed by the tax

assessor of the county wherein the property is situated. Code, §§ 3964-3976.

TYSON, J.—The franchises, right of way, roadbed and tracks of a railroad, together with the rolling stock by which it is operated, are practically and substantially one property, though its lines may extend through several counties and States. The injustice and inequalities resulting from the assessment of such property, in parcels, by different officials, and the unequal distribution of the proceeds of taxation, based on values thus assessed, to the several jurisdictions which afford protection to the property, are evils which our legislation has constantly sought to avoid.

Since the act of 1868, our statutes, for the purpose of taxation, have treated certain items of property of a railroad as a unit, or one piece of property, to be assessed by a single board, and has distributed the proportion of county taxes derived among the several counties in which the railroad is situated, in the proportion the number of miles in that county bears to the total length of the road; while other items of taxable property of railroads have been treated as local property, to be assessed by the officials of the county where it is situate and which derived the entire benefit of taxes thereon, without any reference to the value of the other property of the railroad, in other counties. In other words, for the purposes of taxation, certain property has been delocalized and treated as pertaining equally to the whole line, and, therefore, to be assessed by a single board, distributing the taxes thus derived in the manner we have stated above; while other property has been considered as purely local, to be assessed by local officers, wherever the property is situated, so that the county in which it is assessed may have the benefit of its full taxation value.

What these several items are, which are thus classified for the purpose of different assessment and distribution, are carefully selected and defined by our statute.—Code, §§ 3964-3976. In determining what shall be classed as local and what is to be considered

as pertaining to the whole line, the legislature has not always been governed by the necessity for the use of the things so selected. In the operation of a railroad, water supplies and tanks are certainly as indispensable parts of the road as side tracks, yet, as we shall presently see, one is specifically mentioned as an item of property pertaining to the whole road, while the other is treated as local and assessable by the local authorities.

During the past thirty years the construction and policy of these statutes have been several times before this court, though not upon the precise question here presented.—*Auditor v. Jackson County*, 65 Ala. 143; *Perry Co. v. Railroad Co.*, 68 Ala. 556; *State v. Board of Revenue*, 73 Ala. 60. The provisions of these statutes have been carried forward, substantially as they now appear in the Codes of 1876, 1886 and 1896. During that long period, the high executive officers of the State, who constitute the State Board of Assessment, charged with the assessment of the property of railroads, have uniformly held that such board of assessment had no jurisdiction to assess any property of railroads, except right of way, road-bed, side tracks and main tracks, together with the locomotives and cars, and supplies carried on trains for sale to employes; and that structures of all kinds, on the right of way, were property assessable by the assessors of the county in which such property is found. This construction of the statute, if the matter were one of doubt, is persuasive to the conclusion, at least, against, if not fatal, to the contention of appellant. We need not and do not, however, rest our opinion on this ground, since the same result inevitably follows from the proper construction of the statute itself. The State Board of Assessment is a mere creature of the statute, possessing only statutory powers, and a limited jurisdiction. It has no jurisdiction whatever to assess any property of a railroad company, save as the statute confers that right upon it. The statute requires railroad companies to make returns to the Auditor. These returns must be in writing and show the total length of line, "in-

cluding the right of way, road-bed and side tracks and main tracks in this State," and the number of cars and the amount of supplies, etc. These returns the Auditor must lay before the State Board of Assessment.—§ 3964. The Governor, Secretary of State, Auditor and Treasurer constitute a board for the assessment of items of property of railroads and other companies "required to be returned to the Auditor." When the State Board of Assessment meets, it must determine the valuation of the different items of property "required to be returned to the Auditor," and assess such property for taxation.—§ 3967. There is also a provision, that "all property, real or personal" belonging to a railroad "which is not required to be returned to the Auditor" must be returned to the tax assessor of the county in which it is taxable, and by him assessed as the property of like kind of private citizens of his county. It thus appears from the very words of the statute and by repeated provisions therein, that the jurisdiction of the State Board of Assessment to assess any items of railroad property is entirely dependent upon the fact whether, under the law, such items "are required to be returned to the Auditor." It is of no consequence how indispensable the property may be to the operation of the road, or what its character is. If the railroad is not "required to return it to the Auditor," the State board is wholly without jurisdiction to assess it, and it must be assessed by the county tax assessor. This is the deliberate and carefully repeated provision of the statute, and the courts have no power to enlarge or diminish the jurisdiction of the State board, by construction or amendment based upon the supposed incongruity of requiring the right of way to be returned to one tribunal and other property to another. The legislature knew, of course, that railroads frequently maintain station houses, depot buildings, machine shops, tanks and fixtures on the right of way, but the statute nowhere requires any of these things to be returned to the Auditor; but, on the contrary, by careful enumeration of specific things which are on the right of way, to-wit, road-bed, side track and main

track, requires these special items off property and
these only, to be returned to the Auditor, and thus by
the careful enumeration of specific things, which are re-
quired to be returned to him, excluding the duty to
return anything else which may be on the right of way.
As nothing which is on the right of way, except the
road-bed, side and main tracks is "required to be re-
turned to the Auditor," the State board is without
jurisdiction to assess any other items of property than
those named, notwithstanding such items may be upon
the right of way.

The sections of the Code above referred to, however,
are not the only sections which govern in determining
what is included, and was intended to be included, by
the language employed in section 3964, as to the items
"required to be returned to the Auditor." Section
3973, for instance, provides that when the county
assessor receives notice from the Auditor of the num-
ber of miles in his county, and the proportionate value
of the other property assessable by the State board and
taxable in his county—cars, supplies, etc.—he must
enter them in his book of assessment "in addition to
the assessment of other real estate, fixtures, machinery,
tools and property of such company, to be assessed
as other property of like kind owned by private citi-
zens of his county." Section 3976, as we have seen,
has further made explicit provision that "all property,
real or personal, belonging to a railroad company,
which is not "required by the provisions of this article
to be returned to the Auditor must be returned to
the tax assessor of the county in which it is taxable
and by him assessed as other property of the company
is returned and assessed." It seems quite clear from
an inspection of the statute that these sections provide
that every species of property which is not specially
"required to be returned to the Auditor," shall be
assessed by the county assessor, whether it be on or off
the right of way, or however indispensable to the road.

As we have seen, there is nothing in the policy or
words of the statute which can lead to the conclusion,
that the law-makers intended fixtures, machinery and

tools and other property which the county assessor is
specifically commanded to assess, shall not be assessed
by him if found on the right of way, and, in
that event, is to be assessed by the State board, al-
though these specific items are nowhere "required to
be returned to the Auditor" and carefully excluded
from the jurisdiction of the State board by the terms.
of the statute, defining the items "required to be re-
turned to the Auditor." What good reason can be
assigned for imputing a legislative intent, in view of
.the evident policy of the statute, that depots, struc-
tures, machinery and fixtures, should be assessed by
the State board and added to the value of the road-bed,
etc., to be prorated among the several counties, if
erected on the right of way, and yet, that the same
things, if found a few feet off the right of way, must
be assessed by the assessor of the county in which the
property is situated? What substantial reason can
be given for imputing a legislative intent in the one
case that the value of this structure shall be added to
the value of the tracks, etc., and prorated to the sev-
eral counties in proportion to the length of miles of
road; and yet, that in the other case the assessor shall
assess the other property, and the county in which the
structure is located shall have the benefit of its full
taxable value? The sole purpose of the requirement
that the total length of railroad, "including the right
of way, road-bed, side and main tracks" shall be re-
turned to the Auditor for taxation, is, that these par-
ticular items shall be distributed *pro rata* to the dif-
ferent counties in the proportion the miles in these
counties bear to the total length of the whole line, in-
stead of distributing whatever taxes come from the
value of tracks, rights of way, etc., in each county
solely to it. There was no purpose by the use of the
words "right of way" in specifying things that are "re-
quired to be returned to the Auditor," to draw within
the grasp of the jurisdiction of the State Board all
kinds of property which might be found on the right
of way or to withdraw from the local authorities the
duty to assess other property not "required to be re-

turned to the Auditor" because it may be found on the right of way.

When the context and policy of the statute are considered, we are clear that by the use of the words "right of way" in describing the items of taxation "required to be returned to the Auditor," the legislature meant only the easement of the railroad in land over which it had a right of way and not occupied by a road-bed and side track, to be returned and assessed and prorated among the counties, and that it did not attempt to confer on the State Board jurisdiction of other items than those specifically mentioned, because such property might be found on the right of way; and we are equally clear that the use of the words "right of way," on which might be found things not specifically "required to be returned to the Auditor," cannot be so construed as to give the State board jurisdiction of items which other provisions of the statute require to be assessed by other officers.

Of course, it may be, that a depot or station house on the right of way, is as essential to the operation of the road as the tracks themselves, and it may also be conceded that every structure or thing on the right of way would pass by and be included in the deed to the right of way These considerations, however, are of no moment here, since the question is, not what parts of a railroad are essential to its operation, or what things on the right of way would ordinarily pass by a conveyance of it; but it is, what is the effect on the jurisdiction of a particular board of the inclusion of the "right of way" as to one of the items of the property required to be returned for assessment to that board, when taken in connection with other sections of a tax statute, which provides a complete system, and evinces an unmistakable purpose to have only certain items of taxation, which the statute specifically requires to be returned for assessment, while it remits the assessment of all other items of property to local tribunals. However essential a structure may be to the operation of a railroad; whether it be classed as real or personal property, or fixtures, and whether

or not it would pass by a conveyance of the right of way, can have no influence in determining whether such items are remitted by the statute to a State board or required to be assessed by the county tax assessor. The meaning of the words employed must be gathered from the language of the statute and its obvious policy and not by a consideration of what the words "right of way" would include, in a different connection, or as regards the effect of a conveyance of it or the effect of a sale of it in a collection of taxes.

Affirmed.