50 N.J. Super. 362 (1958)
142 A.2d 257
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HAROLD KRESSLER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Bergen County Court, Law Division.
Decided May 28, 1958.
*363 Mr. Jacob Schneider, attorney for plaintiff-respondent.
Messrs. Leyden and Monaghan, attorneys for defendant-appellant.
MARINI, J.C.C. (temporarily assigned).
This matter was heard on May 1, 1958, and the following facts were stipulated:
*364 The defendant is owner of property, the subject matter of this case, which is in a B-2 business zone in the Borough of Alpine, pursuant to the borough zoning ordinance referred to in the complaint, which ordinance was stipulated as being the ordinance in question.
It was further stipulated that on or about February 22, 1958 the defendant used his property for the storage of various equipment and material as follows: John Deere Tractor Dozer; two-wheeled trailer for dozer; front-end loader; Dodge dump truck, Registration No. XMT 621 with snow plow attached; Ford Dump truck; one bucket for front-end loader; one pile of tires and one pile of wood rustic fence, and that the defendant stored said items, or permitted them to remain on his premises without having obtained the prior approval of the planning board or the mayor and council of said borough.
The defendant was convicted before the local magistrate on a complaint which charged that he violated the provisions of section 6(b) and section 6(b)(3), on the allegation that he used his premises as a public garage without prior approval.
Section 6(b) of the zoning ordinance reads as follows:
"In a `B-2' Business Zone no building or lot shall be used for any purpose except the following:
(1) Any use permitted in a `B-1' zone.
(2) A retail business establishment, bank, office of a professional or business character, except that a funeral parlor or mortuary establishment must be approved by the Mayor and Council according to Section 9 of this ordinance.
(3) A public garage or public automobile filling station or parking lot for the parking or storage of motor vehicles if approved by the Mayor and Council according to Section 9 of this ordinance.
This zone is designed for the purpose of permitting retail business for sale to the ordinary consumer, and is intended to prevent all types of business other than general, small retail business. No business which creates a nuisance or danger to the community by reason of noxious or offensive odors, smoke, sounds or sights shall be permitted. Any business structure containing more than 2500 square feet floor space must be approved by the Mayor and Council according to Section 9 of this ordinance. Residences in the B-2 Zone shall conform to height setback and area requirements of the B-1 Zone."
*365 Section 9 referred to in (3) reads as follows:
"Discretionary Powers. In cases calling for the approval of the Mayor and Council the matter shall first be referred to the Planning Board which shall render a written report within 45 days stating the reasons for the recommendations made. A two-thirds majority vote body (Mayor and Council) shall be necessary to grant approval in those cases calling for said approval where the recommendations of the Planning Board shall be against the granting of such approval.
The objective of discretionary provisions is to enable the Borough Officials to preserve the general character of a neighborhood by permitting the location of certain uses specified herein, in such a way that any adverse effects on adjacent properties will be minimized, or for requiring necessary facilities such as motor vehicle parking and special sewerage disposal."
Section 2(10) reads as follows:
"A `private garage' is a garage or group of garages or garage facilities accessory to a residential building on the same lot, used only for the storage of not more than four non-commercial vehicles and not more than one light truck used exclusively by the owner of the lot. All other garages shall be deemed public garages."
The defendant claims that the ordinance, insofar as it applies to him, is unconstitutional and illegal and that it cannot be enforced against him because of a total lack of definite standards by which the planning board and the mayor and council can grant or deny approval of a parking lot or public garage.
The defendant further contends that his use of his property does not constitute making it a parking lot; that the natural meaning of a parking lot is a place where the public is invited to park or store vehicles for a fee, and that the use of defendant's property by having the above vehicles and equipment owned by him on property owned by him, does not make his property a parking lot or public garage for which approval would be necessary according to the terms of the ordinance.
The plaintiff contends that the property owned by the defendant constitutes a public garage and cites as authority Newark v. Martin, 22 N.J. Super. 32 (App. Div. 1952). *366 In that case the wording of the ordinance is that a "`public garage' shall be construed to mean any building or premises in which a business, service or industry, connected with motor vehicles is conducted or rendered and shall include all premises used for motor vehicles either housed or unhoused." The court held that parking lots were included in that definition. There is no such definition in the ordinance under consideration. In fact, the permitted uses in a B-2 business zone includes public garages, public automobiles, filling stations or parking lots, if approved by the mayor and council.
It is quite obvious that the ordinance in question draws a distinction between public garages and parking lots, but nowhere in the ordinance is there a definition of a parking lot. In view of the fact that parking lot is referred to under a B-2 business zone and permitted therein, if approved by the mayor and council, it is quite obvious that in addition to the natural meaning of the term "parking lot," that a parking lot available to the public was undoubtedly contemplated. Any other interpretation would lead to the obviously wrong conclusion that the parking of any vehicles on any property anywhere in the borough, even while visiting as social guests, would constitute the property used as a parking lot.
It is admitted that the property in question is owned by the defendant and the vehicles and equipment stored on said property were owned by him. Under these circumstances, it is difficult to see how that use of the property can be termed as a parking lot or a public garage under the terms of the ordinance, in view of the fact that no building is involved.
The plaintiff further contends "that the defendant applied for approval to the Mayor and Council by way of the Planning Board, pursuant to the Ordinance, and his application for same was denied." It is not quite clear what application was made, but assuming that it was an application for a permit to build a garage, then the question would arise as to the validity of the ordinance insofar as it provides *367 for broad discretionary powers to be exercised by the mayor and council, in the absence of any fixed norms or standards for the granting or denial of the permit in question.
Plaintiff contends that the defendant is barred from testing the validity of the ordinance because of the rule set forth in Iannella v. Johnson, 136 N.J.L. 514 (Sup. Ct. 1948), and in Home Fuel Oil Co. v. Glen Rock, 118 N.J.L. 340 (Sup. Ct. 1937).
The court does not believe that these cases have application and the situation involved may be distinguished. In the first place, because of the broad discretionary powers referred to, it is a serious question as to whether or not any means for appeal are provided in the ordinance from an adverse decision by the planning board or the mayor and council. Secondly, we are here concerned with a trial de novo, and it is the opinion of the court that the defendant may advance all defenses which he may have, including an attack on the validity of the ordinance.
In the case of Phillips v. East Paterson, 134 N.J.L. 161 (Sup. Ct. 1946), the court said at page 163 that "An ordinance is invalid where it vests broad discretion in the mayor and council in granting or not granting a permit." It further said: "The ordinance is void in that it does not fix any norm or standard for the granting of gasoline service station permits in the `C' zone." This case involved an attack on an ordinance which purported to give the mayor and council a broad discretionary power to grant or deny permits for gasoline service stations.
The ordinance under consideration also gives broad discretionary powers to the planning board and the mayor and council to grant or refuse permits.
A reading of section 6(b) (3) and section 9 referred to therein, makes it quite obvious that no norms or standards have been set forth in connection with the granting or refusing of a permit for a public garage, or public automobile filling station, or parking lot, making it possible, if not probable, for a permit to be granted in one case and refused *368 in another case even though the circumstances might be exactly the same.
No separate ordinance has been called to the attention of the court to overcome the deficiencies of the ordinance in question. This is not a situation where certain specified uses are permitted or prohibited, but is rather an attempt to incorporate a licensing feature without adequate norms or standards provided.
Under all the circumstances, the court comes to the conclusion that the conviction of the defendant on the complaint is illegal and, therefore, is reversed and a judgment of not guilty is entered.